UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEVIN DENNIS,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        No.  4:17 CV 2611 CDP
                                       )
NANCY A. BERRYHILL, Deputy             )
Commissioner of Operations for         )
Social Security,[1]                    )
                                       )
            Defendant.                 )

## MEMORANDUM AND ORDER

Plaintiff Kevin Dennis brings this action under 42 U.S.C. §§ 405 and 1383

seeking judicial review of the Commissioner's final decision denying his claims

for disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI

of the Act, 42 U.S.C. §§ 1381, *et seq.*  Because the Commissioner's final decision

is supported by substantial evidence on the record as a whole, I must affirm the

decision.

### Procedural History

On October 21, 2014, the Social Security Administration denied Dennis's

April and May 2014 applications for DIB and SSI, in which he claimed he became

---

[1] Nancy A. Berryhill's term as Acting Commissioner of Social Security expired in November 2017.  She continues to lead the agency as Deputy Commissioner of Operations.

disabled on October 1, 2010, because of depression, anxiety, bipolar disorder, and stress disorder. Dennis later amended his alleged onset date to January 25, 2014. A hearing was held before an administrative law judge (ALJ) on August 18, 2016, at which Dennis and a vocational expert testified. On December 16, 2016, the ALJ denied Dennis's claims for benefits, finding the vocational expert's testimony to support a finding that Dennis could perform his past relevant work as a mail clerk as well as other work that exists in significant numbers in the national economy. On September 20, 2017, the Appeals Council denied Dennis's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Dennis claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Dennis argues that the ALJ erred in assessing his residual functional capacity (RFC) by improperly evaluating the opinion evidence of record as well as his credibility. Dennis also contends that the ALJ improperly engaged in his own medical conjecture in his review of the medical evidence. Finally, Dennis argues that the ALJ engaged in an improper and incomplete analysis regarding his ability to perform his past work and, further, posed an improper hypothetical to the vocational expert based upon the flawed RFC. Dennis asks that I reverse the ALJ's decision and award benefits.

For the reasons that follow, the ALJ did not err in his determination.

**Medical Records and Other Evidence Before the ALJ**

Plaintiff Dennis is a veteran and recovering heroin addict. In 2011, he was convicted of several thefts and burglaries that he committed to support his addiction, and he was sentenced to a term of imprisonment. During his incarceration, Dennis became clean and maintained sobriety. He was released from prison in January 2014 and began receiving counseling, psychiatric treatment, and medical treatment from the Gateway Foundation, VA Medical Center, and Assisted Recovery Centers of America (ARCA). This treatment included individual and group counseling, prescriptions for and management of psychotropic medications, and monthly injections of Vivitrol, a medication used to prevent relapse to opioid dependence. Unfortunately, despite admirable effort, Dennis has had several opioid and other substance abuse relapses since his release from prison.

Dennis suffers from anxiety and depression. He was also diagnosed with bipolar disorder, post-traumatic stress disorder (PTSD), and personality disorder, which the ALJ found to be severe impairments. Dennis claims that he is disabled and unable to work because of these mental impairments, which exist independently of his drug addiction. He reported to several providers that various work attempts made during his sober periods were unsuccessful because of

increased anxiety and irritability, which he claims is caused by being around

people, his fear of making mistakes and being reprimanded, and his perception that

people can tell that he is mentally ill.

With respect to the medical records and other evidence of record, I adopt

Dennis's recitation of facts set forth in his Statement of Uncontroverted Facts

(ECF 24) and note that they are admitted by the Commissioner (ECF 25). This

statement provides a fair and accurate description of the relevant record before the

Court. Additional specific facts are discussed as needed to address the parties'

arguments.

## Discussion

A.    Legal Standard

To be eligible for DIB and SSI under the Social Security Act, Dennis must

prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.

2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir.

1992). The Social Security Act defines disability as the inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled

"only if his physical or mental impairment or impairments are of such severity that

he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If he meets

this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, including those caused by a severe mental impairment, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those

positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

B.    The ALJ's Decision

The ALJ found that Dennis met the requirements of the Social Security Act

through December 31, 2016, and that he had not engaged in substantial gainful

activity since January 25, 2014, the alleged onset date of disability. The ALJ

found that Dennis's bipolar disorder, PTSD, opioid dependence in sustained

remission, generalized anxiety disorder, and personality disorder were severe

impairments, but that these impairments did not meet or medically equal a listed

impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-17.)[2] The ALJ

found that Dennis had the RFC to perform a full range of work at all exertional

levels, except that he was limited to "simple, and/or repetitive work that does not

require close interaction with the public or coworkers (defined as not needing to

meet with coworkers regarding work process, work coordination, work tools, work

duties, or things of that nature)." (Tr. 19.)

The ALJ determined that Dennis's RFC did not preclude him from

performing his past relevant work as a mail clerk. (Tr. 34.) Alternatively,

---

[2] The ALJ also noted that Dennis had a history of hepatitis A, hepatitis C, and shoulder pain, but he found these impairments to be non-severe. (Tr. 17.) Dennis does not challenge this finding.

considering Dennis's RFC and his age, education, and work experience, the ALJ

found vocational expert testimony to support a conclusion that Dennis could

perform work as it exists in significant numbers in the national economy, and

specifically, as a wrapper/packager, an assembler, or a product inspector.  (Tr. 35-

36.)  The ALJ thus found Dennis not to be under a disability from January 25,

2014, through the date of the decision.  (Tr. 36.)

C.    RFC Analysis

    Dennis claims that the ALJ erred in his RFC assessment because he

improperly discredited Dennis's subjective complaints, improperly weighed the

opinion evidence, and improperly engaged in his own medical conjecture when

reviewing the evidence of record.

    A claimant's RFC is the most he can do despite his physical or mental

limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ

bears the primary responsibility for assessing a claimant's RFC based on all

relevant, credible evidence in the record, including medical records, the

observations of treating physicians and others, and the claimant's own description

of his symptoms and limitations.  *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*,

390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a).

Accordingly, when determining a claimant's RFC, the ALJ must necessarily

evaluate the consistency of the claimant's subjective complaints with the evidence

of record.  *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).  In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace."  *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).  Some medical evidence must support the ALJ's RFC determination.  *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12.  The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner.  *Pearsall*, 274 F.3d at 1217.

### 1. *Evaluation of Symptoms*[3]

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s).  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record.  *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the

---

[3] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929.  This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

ALJ must consider all evidence relating thereto, including the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). If the ALJ finds the statements to be inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Here, after finding at Step 3 of the sequential analysis that Dennis's impairments did not meet the criteria for listing-level disability, the ALJ evaluated Dennis's statements of symptoms and assessed his RFC. The ALJ addressed each of the *Polaski* factors and made specific findings that Dennis's claimed symptoms were inconsistent with the record. Because these findings are supported by substantial evidence on the record as a whole, I must defer to the ALJ's determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

The ALJ first noted that Dennis's statements made to a Gateway counselor in January 2014 were inconsistent with his hearing testimony. At the hearing, Dennis testified that it became clear to him in January 2014 that he could not work

because of severe anxiety, severe depression, irritability, and anger. Dennis

testified his depression was "extremely bad" and was probably his "worst

nemesis." (Tr. 49-50.) But the ALJ noted that Dennis reported to his counselor in

January 2014 that he had no employment-related issues and required no

employment-related assistance. The ALJ also found it significant that Dennis

reported to the counselor at that time that he had no current psychiatric issues other

than anxiety and specifically had no serious problem with depression. (Tr. 21,

399.) Inconsistency in a claimant's statements is a valid reason to discount

subjective complaints. *Ply v. Massanari*, 251 F.3d 777, 779 (8th Cir. 2001). The

ALJ also noted that Dennis reported to the counselor that the medication he took

for anxiety, BuSpar, was very helpful in managing his symptoms. (Tr. 22, 401.)

Not only is this statement inconsistent with Dennis's hearing testimony regarding

his inability to work in January 2014 because of severe anxiety, but evidence that

an impairment can be controlled by treatment or medication is inconsistent with a

claim that the impairment is disabling. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th

Cir. 2014).

　　　The ALJ also noted that at various times throughout his treatment, Dennis

stopped taking prescribed medications – including lithium and Vivitrol – and

missed several appointments and meetings with healthcare providers. *See Brown*

*v. Barnhart*, 390 F.3d 535, 542 (8th Cir. 2004) (ALJ properly discounted

subjective complaints for, *inter alia*, claimant's "continuing failure to comply with prescribed treatments."); *see also Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (in determining consistency of claimant's subjective complaints, ALJ may consider noncompliance with doctors' instructions regarding medication).[4]  The ALJ also noted that Dennis continued to take clonazepam (a benzodiazepine) despite several VA health providers cautioning him of the addictive nature of the medication and its contraindication with his history of addiction.  Although I cannot fault Dennis for continuing with clonazepam given that the medication was prescribed by an ARCA doctor and appeared to help Dennis's anxiety symptoms, I do note the record to show that Dennis became combative with VA providers when they refused to prescribe clonazepam in addition to that prescribed by ARCA (*see, e.g.,* Tr. 494-95), and that it was later opined that Dennis exhibited drug-seeking behavior regarding benzodiazepines.  (Tr. 745, 1653.)[5]  In determining the consistency of a claimant's subjective complaints, the ALJ may consider the claimant's misuse of medication.  *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th

---

[4] Although the ALJ considered Dennis's noncompliance with prescribed treatment as a factor in determining the consistency of his statements, which he was permitted to do, the ALJ did not base his adverse determination only on Dennis's noncompliance.  The ALJ was therefore not required to examine the circumstances surrounding such noncompliance and determine on the basis of the evidence of record whether the prescribed treatment would restore Dennis's ability to work or sufficiently improve his condition.

[5] Indeed, although ARCA increased Dennis's dosage of clonazepam in March 2015 (Tr. 926-27), Dennis asked in April 2015 that it be further increased because his current dose was no longer "enough."  (Tr. 738.)

Cir. 2003).

The ALJ also did not err when he considered the inconsistency between Dennis's claimed inability to participate in group therapy because of anxiety symptoms and his report to his therapist in March 2014 that he was comfortable with his therapy group and group counselor. *See Ply*, 251 F.3d at 779 (inconsistent statements). Indeed, the record also shows that Dennis actively participated in and obtained benefit from group therapy throughout the spring of 2014 as well as during the summer of 2016.

The ALJ also noted that Dennis was continually preoccupied with obtaining social security benefits and an increased service-connected disability rating from the VA, and was disinterested in job training or assistance. The record supports this observation. In March 2014, a VA psychiatrist recommended that Dennis participate in compensated work therapy (CWT) but Dennis refused, stating that he wanted disability for anxiety. (Tr. 569.) In June 2014, Dennis worked in construction but was paid "under the table" so as not to jeopardize his chance to obtain disability benefits. (Tr. 403.) In October 2015, Dennis reported to MERS Goodwill – and it was observed by the Goodwill counselor – that he was not motivated to find employment. (Tr. 254.) The Goodwill counselor ultimately opined that, while Dennis had the aptitude and qualities to be successful in a non-stressful work environment, he needed to focus on his mental health and substance

abuse and address employment issues at a later time.  (Tr. 258.)  When Dennis

worked at the VA in 2016, he expressed concern as to how this work would affect

his application for disability.  (Tr. 1529.)  Because an ALJ may consider a

claimant's financial motivation to qualify for disability benefits as one factor in

determining the consistency of the claimant's statements of disabling symptoms,

the ALJ here did not err in considering Dennis's apparent desire for secondary gain

as one of many factors in his determination.  *Ramirez v. Barnhart*, 292 F.3d 576,

581-82 n.4 (8th Cir. 2002).

     In addition, as noted by the ALJ, treatment providers diagnosed or

questioned on more than one occasion whether Dennis was malingering for legal

reasons, including seeking inpatient psychiatric treatment to help with his disability

claim.  (*See, e.g.,* Tr. 1511, 1653.)  An ALJ may consider suspected malingering in

determining the presence and extent of a claimant's alleged symptoms.  *Kamann v.*

*Colvin*, 721 F.3d 945, 951 (8th Cir. 2013); *Ramirez*, 292 F.3d at 581-82 n.4.

     The ALJ also noted, and the record shows, that Dennis's mental status

examinations were generally normal throughout his treatment and that, between

September 2014 and December 2015, his treating psychiatrist consistently assigned

Global Assessment of Functioning (GAF) scores ranging from 60 to 64.[6]  *See, e.g.,*

---

[6] *See, e.g.,* Tr. 438-48, 813-14, 855-56, 886, 902, 906-07, 913-14, 918-19, 926-27, 950-51, 964, 974, 976, 982, 992, 1533, 1543.  A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness."  *Diagnostic and Statistical*

*Halverson,* 600 F.3d at 930-31 (ALJ may consider history of GAF scores), and at 933 (ALJ may consider fact that several examinations showed no abnormalities). Increased irritability, complaints of anxiety and depression, and reports of suicidal ideation coincided with when Dennis stopped taking medication, which led to drug relapses. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (impairments that are amenable to treatment do not support a finding of disability).

Throughout his decision, the ALJ noted that Dennis's daily activities included working out at the gym, walking and being outdoors, reading, working on the computer at the library, using public transportation, and watching sports. Although Dennis criticizes the ALJ for considering his ability to engage in light activities as a basis to discount his subjective complaints, I note, first, that an ALJ must consider such activities when evaluating the consistency of a claimant's statement of symptoms; and, second, that the ALJ here did not rely only on Dennis's ability to engage in these activities to discount his subjective complaints.

Finally, and most notably, the ALJ pointed generally to the overall inconsistencies between the medical evidence of record and Dennis's statements made at the hearing as well as to several healthcare providers regarding his drug

---

*Manual of Mental Disorders*, Text Revision 34 (4th ed. 2000). A GAF score of 51 to 60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). A score of 61 to 70 indicates some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *Id.*

use.  Dennis minimized this use by reporting (or testifying) that he had either not used or had had only one relapse since September 2011.  A review of the record in its entirety, however, shows Dennis's drug use after January 2014 to be quite extensive:

- August 2014 – blood tested positive for cocaine (Tr. 845);
- September 2014 –opioids (twice) (Tr. 928, 958, 968);
- November/December 2014 – IV drug use (Tr. 793);
- April 2015 – crack cocaine, heroin (Tr. 761);
- May 2015 – crack cocaine, heroin (Tr. 1127);
- August 2015 – cocaine, alcohol, street Vicodin (Tr. 1072);
- January 2016 – intermittent drug use (Tr. 1495);
- April 2016 – opioid pills (Tr. 1005);
- May 2016 – heroin (Tr. 1056);
- June 2016 – opioids (Tr. 1059); and
- July 2016 – IV heroin and cocaine (Tr. 1056).

"Contradictions between a claimant's sworn testimony and what he actually told physicians weigh against the claimant's credibility."  *Frank v. Colvin*, 129 F. Supp. 3d 794, 806 (E.D. Mo. 2015) (citing *Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006)).  In addition, an ALJ may consider a claimant's failure to abstain from drugs and alcohol in determining whether his statements regarding disabling symptoms are consistent with the record.  *Wildman*, 596 F.3d at 969.

The ALJ thoroughly reviewed Dennis's testimony and the other evidence of record and, in a manner consistent with and as required by *Polaski*, evaluated Dennis's statements of symptoms and articulated specific reasons to find that they were inconsistent with the record.  Because this determination is supported by

good reasons and substantial evidence on the record as a whole, I must defer to it. *Julin*, 826 F.3d at 1086.

2.    *Opinion Evidence*

When evaluating opinion evidence, an ALJ is required to explain in his decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). The Regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating physician's opinion is not given controlling weight, the

Commissioner must look to various factors in determining what weight to accord that and any other medical opinion of record, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for her findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c), (e); 416.927(c), (e). Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion. *Goff*, 421 F.3d at 790-91. The Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In this action, Dennis challenges the ALJ's treatment of the opinion evidence of record from: a) GAF scores; b) Gateway counselors Neufeld-Wall and Adkisson; c) MERS Goodwill counselor; d) February 2016 VA report; e) VA psychiatrist Dr. Irvin; and f) ARCA psychiatrist Dr. Kamat. I address each of these opinions in turn.

a.     GAF Scores and Dr. Kamat

Dr. Kamat was Dennis's psychiatrist at ARCA beginning in June 2014. On several occasions from September 2014 through December 2015, he assigned GAF scores to Dennis that ranged from 60 to 64. According to the fourth edition of the

American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), these scores indicate that Dennis experienced moderate to mild symptoms in social, occupational, and psychological functioning. *See* DSM-IV at 32-34. The fifth edition of the DSM, issued in May 2013, does not include the GAF scale.

In his decision, the ALJ noted the GAF scores assigned by Dr. Kamat and wrote that he was required to consider these scores "as opinions under agency rules[.]" (Tr. 33-34.) Dennis claims that this was error because considering GAF scores as opinion evidence contradicts the Commissioner's policy on GAF scores. Actually, the opposite is true.

In July 2013, the Social Security Administration issued an Administrative Message that explicitly stated that "a GAF rating is a medical opinion as defined in 20 C.F.R. §§ 404.1527(a) and 416.927(a)" that must be weighed under §§ 404.1527(c) and 416.927(c). *See* Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 (July 22, 2013) REV (Oct. 14, 2014), *quoted in Emrich v. Colvin*, 90 F. Supp. 3d 480, 492 (M.D.N.C. 2015). Invoking AM-13066, this Court has held that GAF scores are considered opinion evidence, *see, e.g., Bates v. Berryhill*, No. 4:16-CV-1572 NAB, 2018 WL 1519373, at *3 (E.D. Mo. Mar. 28, 2018), that must be weighed just like other evidence of record, *see Evanoff v. Berryhill*, No. 2:17 CV 41 JMB, 2018 WL

4489362, at *6 n.5 (E.D. Mo. Sept. 19, 2018). Although GAF scores are not themselves determinative of the severity of a claimant's mental impairments, *see Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citing 65 Fed. Reg. 50746, 50764-65), they nevertheless must be considered by the ALJ as opinion evidence. The ALJ did not err when he did so here.

Dr. Kamat was Dennis's treating psychiatrist at ARCA and first saw Dennis in June 2014. On September 25, 2014, after two additional visits, Dr. Kamat completed a mental RFC assessment wherein he opined that Dennis was either unable to meet competitive standards or had no useful ability to function with respect to most mental abilities and aptitudes needed to do unskilled work, including maintaining attention for two-hour segments, maintaining regular attendance, being punctual, making simple work-related decisions, and completing a normal workday and workweek without interruptions from psychologically-based symptoms. He further opined that Dennis had no useful ability to function when it came to the mental abilities or aptitudes necessary for semiskilled or skilled work. Finally, he opined that Dennis was seriously limited but not precluded from interacting appropriately with the general public and maintaining socially appropriate behavior. Dr. Kamat also estimated that Dennis's impairments or treatment would cause him to be absent from work more than four days each month. (Tr. 613-17.) Notably, during his examination of Dennis on this same

date, Dr. Kamat noted Dennis to have a normal mental status examination, and he assigned a GAF score of 60, indicating moderate symptoms.  (Tr. 906-07.)

The ALJ recognized that the opinion of a treating physician is usually accorded considerable weight if it is supported by the physician's records and the physician has a longitudinal treatment relationship with the claimant.  (Tr. 33.) Against this backdrop, the ALJ accorded Dr. Kamat's September 2014 mental RFC assessment little weight, noting that he had only a three-month relationship with Dennis when he rendered this opinion and, further, that Dr. Kamat repeatedly assigned GAF scores indicating that Dennis exhibited only mild to moderate symptoms.  (Tr. 25, 33-34.)  Because Dr. Kamat's September 2014 RFC assessment, which essentially found that Dennis was unable to engage in most work-related mental functions, is inconsistent with his own assigned GAF scores showing mild to moderate symptoms, the ALJ did not err in discounting Dr. Kamat's opinion.  *Goff*, 421 F.3d at 791.  *See also Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (ALJ may discount or disregard treating physician's opinion if he rendered inconsistent opinions, thereby undermining the credibility of such opinions).  Further, the ALJ was permitted to discount Dr. Kamat's September 2014 assessment given Dennis's limited treatment relationship with him at that time.  *See Nishke v. Astrue*, 878 F. Supp. 2d 958, 982 (E.D. Mo. 2012) (citing *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007)).

Accordingly, the ALJ did not err in discounting Dr. Kamat's September 2014 mental RFC assessment based, in part, on the GAF scores assigned by Dr. Kamat, which the ALJ was required to consider.

b.     Gateway Counselors Neufeld-Wall and Adkisson

On April 10, 2014, one of Dennis's Gateway counselors, Mary Beth Neufeld-Wall, wrote a letter "To Whom It May Concern" describing Dennis's symptoms of anxiety as well as his compliance with treatment and attendance at weekly counseling appointments.  She reported that Dennis experienced panic attacks, racing thoughts, sleep disturbances, and isolation because of his mental impairments, and that Dennis was particularly anxious in social situations. Neufeld-Wall concluded that despite treatment, Dennis's mental impairments continued to "impact his ability to function, particularly in terms of gainful employment and spending extended periods of time in the community."  (Tr. 852-53.)

On June 4, 2014, another Gateway counselor, Katie Adkisson, wrote a letter at Dennis's request regarding his disability application, stating that "working is not the best idea" for Dennis given his anger and anxiety.  (Tr. 663.)  On August 27, 2014, Adkisson prepared another letter stating that Dennis continued to have issues

with anxiety despite medication and his period of sobriety. (Tr. 672.)[7]

The ALJ accorded little weight to the opinions expressed in the counselors' letters, reasoning that the letters were written at Dennis's request after only a short treatment relationship and, further, that the letters were based on Dennis's self-reports of anxiety, which were inconsistent with his earlier report that his anxiety was manageable. (Tr. 34.) The ALJ also found that Neufeld-Wall's treatment records were more consistent with Dennis's earlier denial of problems, including his statement that his anxiety was manageable. (Tr. 25.) The ALJ did not err in according little weight to these opinions.

First, as noted by the ALJ, the counselors' treatment records during this time show that Dennis did not experience debilitating symptoms from any mental impairment and that, although he experienced intermittent increases in anxiety, he was observed by his counselors to be doing very well. (*See generally* Tr. 401-48.) In May 2014, Neufeld-Wall observed Dennis to be calm with an even mood, and he reported having no significant problems. (Tr. 405.) In June 2014, Neufeld-Wall noted that Dennis was not in any distress and had an even mood, and Adkisson noted that he was calm and doing "okay" with his construction job. (Tr. 402-04.) An ALJ may discount a treating provider's opinion when it is

---

[7] Notably, on August 5, 2014, Dennis reported to Adkisson that he had been off of his medication (Tr. 670), and his blood tested positive for the presence of cocaine on August 28. (Tr. 845).

inconsistent with her own treatment notes.  *Milam v. Colvin*, 794 F.3d 978, 983

(8th Cir. 2015).

Further, given the counselors' repeated observations of Dennis's calm affect

and controlled behavior, the ALJ did not err when he considered the counselors'

opinions regarding Dennis's employability to be based on his subjective

complaints rather than objective evidence.  *See Teague v. Astrue*, 638 F.3d 611,

615 (8th Cir. 2011).

Accordingly, the ALJ did not err in discounting the Gateway counselors'

opinions regarding Dennis's ability to work.

        c.    <u>MERS Goodwill</u>

As noted above, the MERS Goodwill counselor opined in October 2015 that

Dennis should wait on his employment endeavors and focus on his mental health

and substance abuse issues.  The ALJ accorded no weight to this evidence, noting

that an inability to work because of substance abuse cannot be a basis for disability

given that such abuse would be material to a finding of disability.  (Tr. 34.)

An ALJ's determination of disability must first be made without segregating

out any effects that might be due to substance use disorders.  *See Brueggemann v.*

*Barnhart*, 348 F.3d 689, 694 (8th Cir. 2011).  Accordingly, on its face, the ALJ's

determination to wholly disregard the counselor's opinion only because it included

the effects of Dennis's substance abuse was error.  *Id.*  However, upon examination

of the counselor's records and opinion, as well as the other evidence of record, I find this error to be harmless.

Dennis met with the Goodwill counselor on four occasions in October 2015. The counselor noted that Dennis arrived on time for his appointments, followed instructions, and had strong communications skills. The counselor opined that Dennis would do well in interviews with practice but that, although Dennis expressed a desire to work, he was not motivated to find employment because of his anxiety. The counselor observed that Dennis had overcome his substance abuse but continued to work through some mental health issues with treatment that he found beneficial. The counselor opined that, given Dennis's current schedule, searching for work at the present time would be "too much." Although the counselor opined that Dennis's anxiety caused him to be functionally limited, he nevertheless found that Dennis had the aptitude and leadership qualities to be successful in a non-stress environment. Regardless, the counselor recommended that Dennis work on obtaining control over his mental health issues, focus on his substance abuse and parole, and address employment at a later time. (Tr. 252-59.)

Notably, the Goodwill counselor did not opine that Dennis was unemployable, whether because of substance abuse issues or otherwise. Indeed, the counselor found that Dennis had the characteristics and skills to work in a non-stress environment and opined that vocational training would assist in achieving

this goal. However, the counselor felt that Dennis would be better served if he focused on his other issues at the present time and revisited his employment goals in the future. The ALJ's failure to give any weight to this opinion did not change the outcome of the case, especially since the ALJ's RFC assessment that limited Dennis to simple, repetitive work with no required close interaction with the public or coworkers is consistent with low-stress work, including the specific work that the ALJ found Dennis able to perform. *See, e.g., Martise*, 641 F.3d at 926 (mail clerk); *Cox v. Astrue*, 495 F.3d 614, 616 (8th Cir. 2007) (assembler); *Bonner v. Colvin*, No. 4:14CV1951 NCC, 2016 WL 51085 (E.D. Mo. Jan. 5, 2016) (packager).

Accordingly, because the ALJ's claimed error regarding the Goodwill counselor's opinion did not affect the outcome of the case, remand on this basis is not warranted. *See Byes v. Astrue*, 687 F.3d 913, 917-18 (8th Cir. 2012).

d.    February 2016 VA Report

On February 5, 2016, a rehabilitation counselor with the VA issued a Rating Board Memo finding Dennis "not employable" for Chapter 31 services. (Tr. 260.)[8] The ALJ discounted this opinion, noting it to be inconsistent with the fact that

---

[8] The "Chapter 31 program" is a vocational rehabilitation and employment program that assists entitled veterans with service-connected disabilities and an employment handicap to prepare for, find, and maintain a job. *Vocational Rehab. & Employ. Servs.: Ch. 31*, https://www.benefits.va.gov/VocRehab/docs/Ch31FactSheet.pdf.

Dennis was working at the VA at the time the opinion was rendered and, further, because whether a claimant is employable or disabled is a matter reserved to the Commissioner, who is not bound by the decisions of other agencies. Because these findings are supported by the record and constitute good reasons to discount this opinion evidence, the ALJ did not err in this determination. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006).

   e. <u>Dr. Irvin</u>

   In letters dated January 13 and May 13, 2015, Dennis's treating VA psychiatrist, Dr. Irvin, wrote to Dennis that he agreed with Dr. Kamat's earlier assessment that Dennis's problems with mood and anxiety prevented him from gainful employment and that he was concerned that an attempt to work currently could lead to a relapse of symptoms. (Tr. 779, 1733-34.) The ALJ discounted Dr. Irvin's opinion regarding Dennis's employability, noting that the issue of whether a claimant could work is a matter reserved to the Commissioner. (Tr. 34.) Discounting a treating physician's opinion on this basis is not error. *Ellis*, 392 F.3d at 994.

   f. <u>Lack of Opinion Evidence</u>

   Dennis argues that the ALJ's discounting of all the opinion evidence left the record devoid of any evidence from which the ALJ could adequately assess his

RFC, and thus that the ALJ improperly drew upon his own inferences and engaged in medical conjecture to determine Dennis's ability to perform work-related activities. I disagree.

As an initial matter, I note that, contrary to Dennis's argument, the ALJ did not entirely reject the opinion evidence of record. Although the ALJ accorded little weight to some opinions, the RFC nevertheless included significant mental limitations, demonstrating that some credit was given to these opinions. *See Ellis,* 392 F.3d at 994. In addition, there was other opinion evidence of record considered by the ALJ, including reports from a consultative examination by Dr. Lindsay, and VA Compensation and Pension reviews performed by Drs. Davis and Sutherland (*see* Tr. 23-24, 28, 31), but Dennis does not challenge the ALJ's treatment of these opinions.

Further, according limited weight to opinion evidence does not necessarily render the record devoid of substantial evidence upon which an ALJ can base his decision. The limitation of *opinion* evidence does not undermine an ALJ's RFC determination where other medical evidence in the record supports the finding. *See Cox*, 495 F.3d at 619-20; *see also Zeiler v. Barnhart,* 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC determination where ALJ properly considered available medical and testimonial evidence); *Sampson v. Apfel,* 165 F.3d 616 (8th Cir. 1999) (although ALJ discounted the only opinion

evidence of record, a review of the entirety of the medical record provided substantial evidence on the record as a whole to support ALJ's decision). A review of the record here, as detailed above, shows that there was substantial medical and other evidence in the record upon which the ALJ could base his decision, even with the less weight accorded to some of the treating providers' opinions. This evidence includes the contemporaneous treatment notes made by multiple providers that recorded their consistent observations of generally normal mental status examinations, with no abnormal findings other than isolated observations of intermittent increased anxiety or depressed mood, with such exacerbations related to Dennis's failure to take prescribed medication or attend treatment sessions. *See* 20 C.F.R. §§ 404.1528(b), 416.928(b) (signs of psychological abnormalities include abnormalities of behavior, mood, thought, memory, and orientation and must be shown by observable facts); *Brown v. Astrue,* 611 F.3d 941, 955 (8th Cir. 2010) (record showed medication to effectively control mental symptoms and that claimant was not significantly impaired despite medication).

As detailed by the ALJ and throughout his decision, there was sufficient other medical and testimonial evidence of record supporting the determination that Dennis had the RFC to perform work with additional restrictions that he engage in simple, repetitive work with limited contact with the public and coworkers. Accordingly, it cannot be said that the ALJ's decision is not supported by

substantial evidence on the record as a whole. I cannot reverse the decision even if substantial evidence may support a different outcome. *Cox,* 495 F.3d at 619 (even with "full awareness" of the "very real difficulties [claimant] appears to experience," the Court cannot reverse a decision that is based on substantial evidence).

3. *RFC Limitations*

Dennis argues that for the reasons set out above (*i.e.*, improper evaluation of credibility, opinion evidence, and other evidence of record), the ALJ's resulting RFC assessment is not supported by substantial evidence on the record as a whole. Notably, Dennis does not identity which, if any, specific RFC finding and/or limitation is not supported by the record. Nor does Dennis state what additional limitations the ALJ should have found. *Cf. Robson v. Astrue,* 526 F.3d 389, 393 (8th Cir. 2008) (claimant did not identify what limitations were missing from the hypothetical). The burden to establish a claimant's RFC rests with the claimant. *Pearsall,* 274 F.3d at 1217. An ALJ is not required to disprove every possible impairment. *McCoy v. Astrue,* 648 F.3d 605, 612 (8th Cir. 2011). By arguing generally that the limitations set out in the RFC are not supported by the record, with no argument as to what additional limitations are warranted by the evidence, Dennis essentially asks me to reweigh the evidence or review the factual record *de novo,* which I cannot do. *See Smith v. Colvin,* 756 F.3d 621, 626 (8th Cir. 2014).

Instead, my role is to review the record to ensure that the ALJ did not disregard evidence or ignore potential limitations. *McCoy,* 648 F.3d at 615.

Based on the administrative record here and the ALJ's thorough summary of the record, I cannot say that the ALJ overlooked any of Dennis's limitations when assessing his RFC.

D.    Step 4 and Step 5 Analyses

Dennis claims that the ALJ erred at Step 4 of the sequential analysis by failing to consider the physical and mental demands of his past relevant work when determining that Dennis could perform such work. Assuming arguendo that the ALJ did commit this error at Step 4, he nevertheless continued in his analysis and alternatively made a finding at Step 5 that Dennis could perform other work as it exists in significant numbers in the national economy, and specifically, as a wrapper/packager, an assembler, or a product inspector. Although Dennis argues that the ALJ also erred at Step 5 by relying on vocational expert testimony that was based on an improper hypothetical, he provides no support for this contention other than his earlier argument that the RFC was flawed.

For the reasons set out above, the ALJ did not err in his RFC analysis. Because the hypothetical posed to the vocational expert included all of the RFC limitations as determined by the ALJ, and Dennis has presented no evidence or argument demonstrating that he was more restricted, the ALJ did not err in relying

on the expert's opinion given in response to this proper hypothetical. *Guilliams v. Barnhart,* 393 F.3d 798, 804 (8th Cir. 2005) ("The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers.").

Accordingly, substantial evidence on the record as a whole supports the ALJ's alternative finding at Step 5 that Dennis could perform other work as it exists in significant numbers in the national economy. Any challenged error at Step 4 of the analysis was therefore harmless and does not require remand. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (declining to remand for alleged error in opinion when error had no bearing on the outcome).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, I may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case

differently. *Id.*; *see also Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above on the claims raised on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Dennis was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, the decision must be affirmed. *Davis,* 239 F.3d at 966. I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Therefore,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and plaintiff Kevin Dennis's complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered herewith.



CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 19th day of February, 2019.